UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOSUE FLORES CARRETO,

               Movant,

    -against-                         **MEMORANDUM AND ORDER**
                                              Case No. 10-CV-5630 (FB)

UNITED STATES OF AMERICA,

               Respondent.
---------------------------------------------------------x

*Appearances:*
*For the Movant:*
JOSUE FLORES CARRETO, *pro se*
70716-053
USP Atwater
Federal Correction Institution
Post Office Box 019001
Atwater, CA 95301

*For the Respondent:*
LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
By: PAMELA K. CHEN, ESQ.
Assistant United States Attorney
147 Pierrepont Street
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

       Josue Flores Carreto, proceeding *pro se*, moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 on the grounds that he received ineffective assistance of counsel and the prosecutor failed to disclose material evidence pursuant to *Brady v. Maryland*, 272 U.S. 83 (1963).[1]  For the reasons that follow, the motion is denied.

### I.

      From 1991 until his arrest in 2004, Carreto and several members of his extended family smuggled young Mexican women into the United States, abused them and

---

[1] Carreto additionally claims to "join[] in the arguments of his two codefendants . . . to the extent they are applicable and beneficial to him," Mem. in Support of Carreto's § 2255 motion at 31, but neither of his co-defendants has filed a § 2255 motion.

forced them into prostitution. As a result of this conduct, Carreto was charged in a 27-count indictment with one count of conspiracy to engage in sex trafficking, 18 U.S.C. § 371; four counts of sex trafficking, 18 U.S.C. § 1591(a)(1), (2); one count of attempted sex trafficking, 18 U.S.C. § 1594(a); four counts of forced labor, 18 U.S.C. § 1589(1), (2); four counts of transportation of individuals for the purpose of prostitution, 18 U.S.C. § 2421; one count of conspiracy to import aliens for immoral purposes, 18 U.S.C. § 371; four counts of importation of aliens for immoral purposes, 8 U.S.C. § 1328; four counts of alien smuggling, 8 U.S.C. § 1324(a)(1)(A), (B); and four counts of alien smuggling for commercial advantage or financial gain, 8 U.S.C. § 1324(a)(2)(B).

Carreto and his two co-defendants rejected the government's global plea offer, which was then withdrawn. Nevertheless, the defendants subsequently decided to plead guilty to the entire indictment. The Court stressed that it would not give defendants "any promises or guarantees" regarding their sentences, which "might well be more strict than they hope." Transcript of 4/5/2005 ("Plea Tr.") at 10. Carreto's counsel, Telesforo Del Valle, Jr., stated that he had explained to Carreto that "the final sentence rests on [the Court]." Plea Tr. at 11. During the ensuing plea colloquy, Carreto confirmed that he had gone through the indictment with his attorney in his native language of Spanish and understood the charges against him. He responded affirmatively when the Court asked whether he was "satisfied with Mr. Del Valle's representation." Plea Tr. at 31. The Court carefully reviewed the potential sentencing consequences of a guilty plea, emphasizing that no sentence had been agreed upon, and reminded Carreto that he would "not be able to withdraw [the] guilty plea" after he gave it. Plea Tr. at 64, 67. Following Carreto's

2

allocution, the Court accepted his guilty plea to all 27 counts in the indictment.

Carreto retained new counsel, Roy Raymond John Kulcsar, for sentencing. On April 24, 2006, Carreto moved *pro se* to withdraw his guilty plea. On April 27, 2006, counsel informed the Court that the defendants had collectively hired a private investigator, William Acosta, who had obtained transcripts from a Mexican legal proceeding purportedly containing statements by the victims contradicting their statements to the government in this case. The Court denied defense counsel's request to adjourn the sentencing, and also denied the defendants' individual motions to withdraw their pleas. It sentenced Carreto to 50 years' incarceration and five years' supervised release.

The Second Circuit affirmed the denial of Carreto's motion to withdraw his plea, finding that it was "taken knowingly and voluntarily," that the exculpatory evidence from Mexico "did not alter the fact that defendants had knowingly and voluntarily pled guilty," and that any ineffective assistance of counsel claims could more appropriately be raised in a 28 U.S.C. § 2255 petition. *See United States v. Carreto,* 583 F.3d 152, 157-158 (2d Cir. 2009).[2] The United States Supreme Court denied Carreto's petition for a writ of certiorari. *See Carreto v. United States*, 130 S. Ct. 813, 813 (2009).

On December 6, 2010, Carreto timely filed this § 2255 motion.[3]

## II.

---

[2]The Circuit Court also rejected Carreto's argument that national origin bias infected his sentence. *See Carreto*, 583 F.3d at 159-60.

[3]On April 8, 2011, Carreto filed a motion to amend pursuant to Federal Rule of Civil Procedure 15 seeking to submit an affidavit by William Acosta describing the fruit of his investigation. Since the motion does not raise any new claims, the Court construes it as submission of a supplemental affidavit, which it has considered.

3

### A. Ineffective Assistance of Counsel

Carreto claims that his attorneys were ineffective because they (1) failed to adequately investigate the case; (2) failed to provide him with translations of court documents; (3) failed to inform him of his consular notification rights; and (4) provided generally deficient representation.

To prevail on his ineffective assistance of counsel claim, Carreto must show that: (1) his attorneys' performance fell below "an objective standard of reasonableness" as defined by "prevailing professional norms," and (2) he was prejudiced by this failure. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see also Hill v. Lockhard*, 474 U.S. 52, 57-58 (1985) (holding that the *Strickland* standard applies to ineffective assistance claims arising out of a guilty plea). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and representation is evaluated from "counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the plea context, this means "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Several of Carreto's arguments are framed as ineffective assistance of counsel but are in reality challenges to the voluntary nature of his plea. The Second Circuit has already determined that Carreto's plea was "taken knowingly and voluntarily" and that this Court did not err in denying his motion to withdraw it.

4

*Carreto*, 583 F.3d at 157-58. Thus, only challenges based on counsel's performance will be entertained.

**1.**     *Failure to sufficiently investigate the case.*

Carreto argues that his attorneys failed to adequately investigate the facts of his case. He claims they should have learned of the information Acosta describes in his affidavit, namely that several of the victims previously and voluntarily worked as prostitutes in Mexico and the United States; that several of the victims had prior contact with law enforcement authorities, but never mentioned their situation; that all of the victims had freedom of movement and sent money back to their families; that one of the victims previously gave sworn statements to Mexican authorities contradicting her claims in this case; that another victim told Acosta she had never been abused by Carreto; and that witnesses were given beneficial immigration status in exchange for their cooperation.

Whether a defendant is prejudiced by counsel's failure to investigate depends "on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59.

Because Carreto points to no evidence that would likely have caused Del Valle to change his plea recommendation, this claim fails. As an initial matter, Carreto's counsel knew of the victims' improved immigration status because the prosecution disclosed it during discovery. Assuming that counsel was ignorant of the remaining

information, none of it was likely to have changed Del Valle's prediction regarding the outcome of a trial. Most of Acosta's discoveries – that the victims worked as prostitutes, for example, and that they failed to report their condition to authorities – are consistent with the prosecution's theory of the case. His assertions that the women were "free to roam" and sent their earnings back to their families are entirely unsupported and, if true, would have been known to Carreto prior to his plea. If one of the victims told Mexican authorities that she was not under Carreto's control, any such statements must have been given prior to the charged crimes here, all of which took place after the victim was trafficked to the United States. Finally, Acosta maintains that he interviewed one of the victims in Mexico and she denied being abused. Even if this woman had recanted, however, Carreto was not charged with any individual acts victimizing her and she was one of eight victims enumerated in the sex trafficking conspiracy count; without her testimony there would still be seven victims of the conspiracy.

**2.**     *Failure to provide Carreto with translated copies of Court documents.*

Carreto claims that his attorneys failed to provide him with written Spanish translations of court documents, rendering him unable to "consult with his lawyer with a reasonable degree of rational understanding." *United States ex. rel. Negron v. New York*, 434 F.2d 386, 389 (2d Cir.1970) (quoting *Dusky v. United States*, 362 U.S. 402 (1962)). The Constitution, however, does not entitle criminal defendants to written translations of all court documents, *see United States v. Celis*, 608 F.3d 818, 841 (D.C. Cir. 2010), and counsel is not necessarily ineffective for failing to provide such translations,

*see Sanders v United States*, 130 F. Supp.2d 447, 449 (S.D.N.Y. 2001) (denying § 2255 motion based on ineffective assistance of counsel where petitioner received no written translations but could communicate with his attorney and was provided with oral translations of the indictment, plea agreement, and pre-sentence report).[4]

The record is clear that Carreto was able to effectively communicate with his counsel and received oral or written translations of key documents, including the indictment and pre-sentence report (PSR). Del Valle was a native Spanish speaker who communicated with Carreto in Spanish, and Carreto confirmed during his plea colloquy that he had no difficulty communicating with counsel. Kulcsar communicated with Carreto using a paralegal as translator and he told the court that, in his presence, the paralegal read the PSR to Carreto in Spanish.

### 3. *Failure to inform Carreto of his Consular Notification Rights.*

Article 36 of the Vienna Convention on Consular Relations, Apr. 24, 1963, [1970] 21 U.S.T. 77, 100–101, T.I.A.S. No. 6820, provides that an authority detaining a foreign national must, among other things, inform the detainee of the "right" to have his consulate notified and, if the individual so desires, the detaining authority must contact the consulate. Carreto claims that his attorneys were ineffective for failing to notify him of these rights. United States Immigration and Customs Enforcement (ICE)

---

[4]Carreto relies entirely on *United States v. Mosquera*, 816 F. Supp. 168 (E.D.N.Y. 1993), a complex narcotics and money-laundering case in which Judge Weinstein ordered written Spanish translations of indictments, plea agreements, and pre-sentence reports to be provided for 18 defendants. That case, however, emphasized that "[i]t is up to the trial court to decide on the extent and nature of translation services needed by the defendant," *id.* at 174, and has since been limited to its facts. *See Celis*, 608 F.3d at 841.

informed Carreto of his consular notification rights, however, and he signed a form reflecting his decision not to have ICE "notify [his] country's consular officials."

### 4. *The General Quality of Counsel's Representation.*

Carreto claims that the general quality of his representation was so poor that he effectively lacked counsel. With respect to his first attorney, it is evident from the record – including Carreto's affidavit – that Del Valle regularly communicated with his client and kept him appraised of the status of plea negotiations. Moreover, Del Valle did not deviate from a reasonable standard of professional assistance by advising Carreto to plead guilty in the hope that the Court would look favorably on the plea at sentencing. Carreto's argument that Del Valle did not adequately explain the consequences of the plea is directly contradicted by his statements during the colloquy. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) (on a § 2255 motion, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding").

Carreto's claim that Kulcsar never discussed the PSR with him is also contradicted by the record. Kulcsar told the Court that he had reviewed the PSR with Carreto with the help of a Spanish-speaking paralegal; the report was read to Carreto; and Carreto understood it. Carreto did not contradict this account. Even if, as Carreto maintains, Kulcsar did not discuss the PSR with him, Carreto does not suggest that such discussion would in any way have resulted a more lenient sentence. *See United States v. Mena*, 361 Fed.Appx. 242, 244 (2d Cir. 2010).

B.  *Brady* **Claim**

Carreto claims that the prosecution failed to disclose (1) that the victims' were offered improved immigration status in exchange for their testimony and (2) the information Acosta discovered in Mexico. The first of these claims is factually incorrect – the government disclosed the victims' altered immigration status during discovery. With respect to the second, as an extension of the government's obligation to disclose exculpatory material, *see Brady v. Maryland*, 373 U.S. 83 (1963), a "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Carreto does not allege, however, that anyone "acting on the government's behalf" knew of the information Acosta describes.

### III.

Carreto's petition, as supplemented by Acosta's affidavit, is denied in its entirety. Because Carreto has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c).

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 18, 2011